is 24-21 U.S. v. Bimbow My first question before you say anything is the most important for me. Is it Bimbo or Bimbao? How do you pronounce it? Bimbo. Really? Okay. Good morning, Your Honors. Kevin G. Rowe, appearing on behalf of the appellate. If you'll notice, please, this is a case which commenced with the arrest of a confidential informant identified during the course of the trial as Ken Johnson, who, in an effort to alleviate himself of his own exposure in his own case involving conspiracies to distribute narcotics with other individuals, apart from the defendant, became enlisted as a confidential informant. And he was arrested in October of 2020. The conspiracy in this case is alleged to have occurred in November to December 2020. When the investigator, Stephanie Ramirez, made an application to get a GPS tracking device for the defendant's car on the basis of information supposedly supplied by Ken Johnson, certain statements were made in the affidavits, which end up being entirely false. She indicated that she had received information from Ken Johnson, had identified certain individuals involved in the activities of the defendant, Bimbo, and as a result of which she narrated a series of supposed identifications, supposed relationships, none of which were ever borne out, and which, when we investigated initially, and the case proceeded to the ward stage, were challenged that this was a Frank Skidding struggle. Mr. Johnson gave them Mr. Bimbo's phone number, didn't he? He did. He looked at it. And it proved to be inaccurate, and then they began to ultimately lead to a warrant with regard to monitoring some of his calls, right? There was no water tap or anything like that. Well, I'm sorry, with regard to location. So they monitored with regard to his location. They monitored with regard to his location. He also provided them with information, you take umbrage with regard to who made the secret compartment, but a secret compartment in a car that Mr. Bimbo was regularly using that Johnson said was involved in drug transactions, right? The black Honda? Correct. And indeed, it ultimately proved that the black Honda had a secret compartment in it, did it not? It did. So you said that all the information Mr. Johnson gave them was inaccurate, and yet I've just gone through with you a couple of things that proved to be startlingly accurate. Which there was no independent claim. I have a black car, but it doesn't have a secret compartment in it. I find secret compartments to be a touch on the unusual side, particularly when one looks in that secret compartment. When they looked in it, and this is one of your inaccuracies, as you point out, there was a bag there that had some money, but in the car also was drugs and money, right? And a gun, right? Which were only discovered, if I may, following what we submit was an unlawful search of that car. Well, I understand that, but you were talking about inaccuracies, and I just wanted to track down what the inaccuracies were. The inaccuracy was describing who the individual Gamble was. Well, but what does it matter who made the secret compartment? Who cares? That inaccuracy is irrelevant, isn't it? Well, I don't think so. Does it matter if Joe Jones made it or the father-in-law made it? I don't see, because Mr. Gamble wasn't charged, was he? No, he was not. Okay. And Mr. Gamble might find that concerning if he had been charged, but Mr. Bimbo was charged. It was Mr. Bimbo's car, wasn't it? There's no question about that. Okay. Well, and where was the secret compartment? In Mr. Bimbo's car. There's no question about that either. Mr. Bimbo doesn't say that he didn't know about that secret compartment, does he? I don't think there's any burden for him to say that. What we're focusing on is the means and manner in which the police entered the car on the day in question. Once the defendant was removed, handcuffed. So now we're on to the search issue, not the inaccuracy of the information. Well, it's related to the inaccuracies. Okay. Because it's a larger picture in terms of what the inaccuracies include. Okay. And what we submit to the court was inappropriate behavior and impropriety in the manner in which, A, the vehicle was entered without any risk of removal or destruction of the evidence which might have been in there. Once the defendant was under arrest, I submit to the court that the warrant requirement attached. Following the arrest of Bimbo and the search of that vehicle, the investigators entered into and wanted to find out where his apartment was in that building. The officer who testified, they confirmed that they did not even know the location of any apartment, a particularized apartment associated with the defendant in the building, until they first went and asked the superintendent of the building. Okay. Which is conflicted with the testimony of the officer who said that it was a protective sweep was done because somebody could have observed Bimbo getting arrested in the street and thereafter have presented some kind of threat to the officers. Yeah. The fact of the matter is that's entirely fictitious to the extent that they didn't even know where the apartment was or who would have had what view at that time. Okay. Or that there was anybody present in that apartment. Or that there was any exigency that an apartment needed to be entered once they found out where it was to prevent destruction of evidence or to protect the officer's safety. During the course of the testimony, he was unable to articulate that. So we know that there was an initial draft of the warrant application that didn't include that information, right? That was discovered during the sweep, right? Correct. During the so-called protective sweep. Which issue? So, and then the information that was obtained from this. I have some questions for the government with regard to the legitimacy of that sweep. The sweep itself was revealed to the magistrate, correct? Yes, it certainly was. And beyond that, there were photographs taken of the interior of the apartment. Right. Which included the opening of drawers and closets and the staging of evidence, which was all photographed and presented in the search warrant to the issuing magistrate. Which I submit was a deliberate attempt to prejudice the mind of the. I mean, so you're saying that a magistrate wants, you used the phrase, the bell can't be unrung in your brief, as I recall. You're suggesting that a magistrate whose his or her oath is to uphold the law somehow knows to not take that into account, somehow can't take that, inherently cannot do that? In conjunction with the other misstatements about who was identified.  It was replete. The entire affidavit was replete of falsehoods, which I submit, apart from the protective sweep, which again I think was pretextual, again with the photographing of evidence. It's like the Wizard of Oz. Don't pay no mind to the man behind the curtain there working the controls. Sure. But we're reviewing de novo, aren't we, in terms of whether there's probable cause for the warrant? And so we can knock out everything that came from the protective sweep and then evaluate whether the affidavit supported probable cause for the warrant. And regardless of whether the magistrate's understanding of the facts was tainted by this other evidence, I mean, isn't that pretty standard for how we review these things? Of course, excepting for the fact that we had requested the Franks hearing. Because of the material misrepresentation, we should have had an opportunity. So we would have to knock out the protective sweep and we'd have to knock out all of the alleged falsehoods in the affidavit and then decide whether there's still probable cause sort of at each stage along the way. Is that? I would agree with that, yes. Okay. But the problem is that we have all these hearings or these false claims, which I think we were entitled at least to an evidentiary hearing on those issues. I know I'm running out of time, so I'll get right to my second boss report point. You're not only running out, you're out. But we've got you back for two minutes in rebuttal, so we'll hear your next point when we hear back from you. Thank you, Judge. Appreciate it. Good morning, Your Honors. My name is Michael Herman. I represent the United States in this appeal, as I did in the district court. Now, let me start with Judge Wesley's questions. I understand the court has questions about the protective sleeve.  Right. I mean, there's nothing that supports an assertion that somehow somebody might be in danger with regard to that property. It's just as easy for the agents to have sat and stood guard while the application was completed and the warrant was issued, right? So, Your Honor, let me answer that this way. The district court approved of the warrants under the independent source doctrine and never really addressed the propriety of the security sleeve. Then why don't you delineate that for us? And we believe that the security sleeve was conducted in good faith. The agents just arrested the defendant as he entered the black Honda, recovered a firearm and drugs. As the warrant affidavit says, the apartment was a first-floor unit that directly overlooked them. And they had reason to believe there might be somebody inside because of the information that the informant Johnson provided. And what was that information in particular? That Bimbo, the defendant, was a large-scale narcotics trafficking, narcotics trafficker, trafficking in wholesale quantities of drugs using multiple locations and vehicles. But did they ever observe Bimbo at any time in the company of another individual? No, they did, Your Honor. They observed a transaction. Yes, Your Honor. But they never observed Bimbo in the company of any other individual whatsoever, nor did Johnson name a confederate in any way, shape, or form. That is correct. Okay. That is correct, Your Honor. It seems like a stretch. Judge, we believe that the court need not reach that issue, but at a minimum we submit the protective sleeve or security sleeve was conducted in good faith, not only about the potential co-conspirator inside from a safety perspective, given that it was a first-floor unit with a window that directly overlooked the agents, but also to prevent the dissipation of evidence. Drugs are easily flushed, and it was important for the agents in good faith to make sure that didn't happen. All right. Can I shift? The thing I'm struggling the most with in this case is the conspiracy allegation. Yes, Your Honor. It seems like there's more than enough evidence to convict on the substantive offenses, but instead it was litigated as a conspiracy. There's a bunch of different theories about who a co-conspirator might have been to support the finding of conspiracy. Which do you think is the strongest theory as to whose involvement makes this a conspiracy rather than individual engaging in high-level drug transactions? I would say there are two straightforward ways to look at that. The first is simply that Johnson was a co-conspirator. How is Johnson a co-conspirator? I see he's occasionally transacted, but I don't see anything that suggests that they are in a shared operation. Their goals and purposes are directed in the same direction, like a conspiracy. The evidence established that Johnson and Bimbo engaged in multiple wholesale transactions of drugs. We're not talking about a few glycines. We're talking about one was 500 grams, so half a kilogram, and one was 200 grams. Johnson provided Bimbo with a gas mask and cut, and I think the evidence was that Johnson was a close associate. This Court has held that that type of relationship is consistent with a conspiracy. Is consistent with or is sufficient to prove? It is sufficient. I'm sorry. Yeah, okay. What's your strongest case? I'm sorry. Is that Rojas? What's your strongest case? Yes, Your Honor. Okay. I think that's right. And the other point I would say is— Because I see Rojas as sort of providing a non-exclusive list of relevant considerations, most of which point the other way in this case, right? The drugs were provided on credit. There weren't other duties on behalf of conspiracy. There's no evidence of profit-sharing. There was no evidence of protected territory. There was no evidence that in these high-level drug transactions that one was using the other in an intended redistribution. I don't understand how those factors get you to a conspiracy if your anchor theory is that Johnson is the co-conspirator. So, Your Honor, first, as a reviewing court, of course, the court knows that you're considering the evidence in the light most favorable to the government. Sure. All those arguments were presented to the jury, and the jury nevertheless found a conspirator. Because the jury asked to identify— In other words, there were three different theories, and I guess there was no—there's no unanimity instruction here that they all have to agree as to who the co-conspirator is, just that there's a conspiracy. That's correct. In fact, the law is clear that they don't have to identify a specific identified conspirator. This Court has approved that multiple times. But in the Hawkins case, it shows that a prolonged cooperation and a level of mutual trust is sufficient. So is it prolonged? We know that there were a couple of transactions. Is that a prolonged—I mean, I'm just wondering how far— Yes, Your Honor. The evidence was they were essentially co-conspirators since at least 2017. Well, no, the co-conspirators is your legal conclusion that you're drawing. So tell me what the actual evidence was supporting that conclusion. Well, the four concrete transactions were there was a gas mask, there were two drug purchases, and then there was a provision from Johnson to Bimbo of cut, which is a substance used to increase the quantity of drugs. It was often used by fentanyl traffickers. Okay, so those four transactions are the underlying evidence that supports the conclusion that there was a conspiracy. Yes, Your Honor. And I would also say that Bimbo's testimony essentially admitted he had co-conspirators. He admitted he had two primary suppliers of wholesale quantities of drugs, kilogram quantities of drugs. And this Court has previously held on multiple occasions that somebody who buys and sells these quantities of drugs can be assumed to be part of an enterprise that's larger than his individual participation. You said that that fact alone is enough to support that? Yes, Your Honor. Tell me what case we said that in. I think I might have misread some of the cases. Give me one second, Your Honor. Okay, so there's United States v. Hawkins and United States v. Medina. And, indeed, the jury was charged, were they not? That's correct, Your Honor. I don't believe this was objected to, was it? No, Your Honor. This is at 1212 for the transcript. Indeed, if you find the defendant dealt in wholesale qualities of controlled substances, you may but need not infer that he knew or that he was involved in a venture that extended beyond his individual participation. That's correct, Your Honor. And that's directly from this Court. And the two sentences that precede that talk about the fact that you could infer that they were co-conspirators. Yes, Your Honor. And then, lastly, there's the 50,000 Glassenes, which Johnson testified essentially could not be, the sheer amount of work to individually fill, stamp, and package 50,000 Glassenes of fentanyl simply could not be done by a single person, which corroborates Johnson's testimony that the defendant told him he had co-conspirators in Manhattan who bagged up, essentially made those 50,000 Glassenes for him. And those are also co-conspirators. And there were other proposed co-conspirators to the jury, but, again, the jury did not need to identify or even be unanimous in a single co-conspirator. Unless the Court has any other questions, we rest in our brief. Thank you, Your Honors. Thank you very much. Attorney Rohn. I'm looking forward to your second point. Thank you, Your Honor. The second point has to do with the defendant's effort to call Stephanie Ramirez and the other agent, who were the only two authors of any reports, who were the lead investigators on the case, who had been involved intimately with each and every aspect of the investigation. We sought to call them as witnesses in our case. Judge Bellow, unfortunately, thought it was our effort to end-run the ruling for the Franks hearing, but instead it was rather an effort to establish during the course of the trial itself that there was question which would have given rise to a reasonable doubt of the defendant's guilt on the charges of conspiracy. Can you help me understand that a little bit? There's the elements of the crime that have to be proven, and you're wanting to bring somebody up to question the thoroughness of the investigation? No, the thoroughness of what the evidence. What was the proffer as to what you would get from this witness that would be relevant to proving or disproving the elements of the charge? The evidence was that the information she was in possession of and had relayed in the affidavit of the search warrant, again, I'm not end-running the Franks ruling, but it goes to what the defendant actually did, with whom he did it, and how are they establishing the existence of the conspiracy? Making that more concrete, you're describing concepts. What specific, what was it that she was going to say, in your view, that was going to advance your case? Well, for example, she stated that the defendant was seen going to a certain location, that he had gone in and stayed overnight, carrying a bag, and then is seen leaving, something she never saw, which he swears to occur. Was that evidence introduced at trial as an element of proof of the charge? The evidence that was derived as a result of the issuance of the search warrant was. Okay, but once you get past, once you get to trial, aren't we, we're not evaluating the validity of the search warrant. That really would be an end-run around the pretrial rulings. We're evaluating whether the evidence that's presented at trial is sufficient, and so how does whether or not something that she said in a search warrant was true or not, if that evidence was never presented at trial as a basis upon which you're asking the jury to convict him, how is that relevant? I'm struggling with this argument. It's relevant to the extent that she makes specific claims and allegations that the defendant is seen carrying bags which are squared off. A common parlance amongst these investigators these days, which is consistent with drug bag, that there was money found here that was bundled in drug proceeds matter, as compared to a couple of rink-a-gook dollars with some mouthwash and no narcotics whatsoever in his bag. Go ahead. The point being that this, again, it's establishing the existence of the conspiracy, how long it lasted. What you told the trial judge was that you had an interest in calling Ramirez to determine that the investigation all consisted of an extent to which efforts were taken to corroborate the information supplied by the confidential informant. That sounds like the fact that you wanted to relitigate. That's the trial transcripted for. I mean, that's not the argument you just made here. So aren't you bound by what you told the trial judge, the reason why you wanted to produce them? Which sounds like a relitigation of the search warrant, which is what Judge Robinson was just asking you. What it would have done would have contradicted Agent Riley, who did testify, who testified not having prepared his own report, but rather testified from Agent Ramirez's report, and then it would have shown that his testimony, it goes to his credibility. So you could cross-examine him as to the credibility of any statements, statements of fact that he offers based on his observations. You can cross-examine him on that. You might even be able to impeach him or muddle, depending. Why isn't that the ‑‑ if what you're saying is there's something that she put in the search warrant affidavit that she didn't observe that wasn't true, then she's not a competent witness at trial to say it wasn't true. Except for the fact that Agent Riley testified of her report as knowledge he had, including items which were in her report which were inaccurate and unsure. I see. Okay. I think we have your argument here. Thank you very much. We appreciate it. Thank you very much. We will take this under advisement. Thank you, John. Thank you both.